TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

JASON T. BARBEAU
Senior Attorney (D.C. Bar No. 468200)
STEFAN J. BACHMAN
Trial Attorney (S.C. Bar No. 102182)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov
stefan.bachman@usdoj.gov

JUDITH A. PHILLIPS
Acting United States Attorney
District of Hawaii

RACHEL S. MORIYAMA  #3802
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile: (808) 541-2958
Email: Rachel.Moriyama@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

---

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |

1

|  |  |  |
|---|---|---|
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JM FISHERIES LLC,** | ) | |
| **G.S. FISHERIES INC.,** | ) | |
| **JAMES SOUSA, and** | ) | |
| **EDWARD DACOSTA,** | ) | |
| | ) | **COMPLAINT** |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General of the United States, acting at the request of the United States Coast Guard, files this Complaint and alleges the following:

## NATURE OF THE ACTION

1.     This is a civil action brought by the United States against JM Fisheries LLC, G.S. Fisheries Inc., James Sousa, and Edward DaCosta ("Defendants"), seeking civil penalties and injunctive relief for violations of Section 311 of the Clean Water Act (CWA or the Act), 33 U.S.C. § 1321. The Complaint addresses Defendants' April 2018 discharge of harmful quantities of oil from the commercial fishing vessel *Capt. Vincent Gann* into Pago Pago Harbor in American Samoa and Defendants' numerous violations of the Coast Guard's pollution control regulations promulgated under the Clean Water Act.

2

## JURISDICTION, AUTHORITY, AND VENUE

2.      This Court has jurisdiction over this matter pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), and (n), and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Authority to bring this action is vested in the United States Department of Justice by, *inter alia*, 28 U.S.C. §§ 516 and 519.

4.      Venue is proper in this District pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), and (n), and 28 U.S.C. §§ 1391 and 1395(a), because the oil discharge and related violations occurred in American Samoa, the vessel is based in American Samoa, and Defendants reside in, are located in, or do business in American Samoa.

## DEFENDANTS

5.      Defendant JM Fisheries LLC is a Nevada company formed in May 2017 with its principal business address in San Diego, California. JM Fisheries LLC is involved in the commercial fishing and sale of tuna and is the registered owner of the U.S.-flagged *Capt. Vincent Gann* (O.N. 953794). The vessel was built in 1989, measures approximately 230 feet long, and weighs approximately 1,930 gross tons. The vessel is based in American Samoa. The company has owned the vessel since May 2017, and it was the owner and an operator and a person in charge of the vessel at the time of the violations addressed in this Complaint.

6.      Defendant G.S. Fisheries Inc. is a California corporation formed in 2008 with a listed business address in San Diego, California. It has worked with JM Fisheries LLC since about May 2017 and is the corporate vessel manager. It and Defendant Sousa direct and manage the day-to-day operations of the vessel, including overseeing the handling and disposal of wastes, purchasing supplies and equipment, and scheduling fishing voyages and maintenance work. It was an operator and person in charge of the *Capt. Vincent Gann* at the time of the violations addressed in this Complaint.

7.      Defendant James Sousa is the founder of JM Fisheries LLC, and the sole officer and shareholder of G.S. Fisheries Inc. He manages the companies and the vessel and was an operator and person in charge of the *Capt. Vincent Gann* at the time of the violations addressed in this Complaint.

8.      Defendant Edward DaCosta has been the Chief Engineer of the *Capt. Vincent Gann* since about September 2017 and is and was an operator and person in charge of the vessel at the time of the violations addressed in this Complaint.

## FACTS

9.      On or about April 20, 2018, Defendants discharged oil, including oily mixtures, into Pago Pago Harbor, which is the primary port in American Samoa.

10.     The Coast Guard and a spill response company responded to the discharge, and cleanup was performed under the supervision of the Coast Guard.

4

11.     On the same day, the Coast Guard dispatched pollution investigators to determine the source of the oil discharge.

12.     As part of the investigation, the Coast Guard investigators boarded the *Capt. Vincent Gann* and other vessels in the spill area.

13.     During the boarding of the *Capt. Vincent Gann*, the Coast Guard pollution investigators observed that the vessel was undergoing significant engine maintenance work. The engine room bilges were saturated with waste oil, fuel, and water. The investigators collected an oil sample from the vessel's engine room bilge.

14.     The Coast Guard pollution investigators also collected oil samples from the oil observed in Pago Pago Harbor and from the engine room bilges of other vessels in the area at the time of the discharge.

15.     All the samples collected by the Coast Guard pollution investigators were sent to the Coast Guard's Marine Safety Laboratory for analysis.

16.     The laboratory analytical results show that the oil collected from Pago Pago Harbor is a forensic match to the unique combination of oil collected from the engine room bilge on the *Capt. Vincent Gann*.

17.     The samples collected from the bilges of other vessels in the spill area did not match the oil collected from Pago Pago Harbor.

18.     Relying upon these results and other observations during the investigation, the Coast Guard determined the oil that was discharged into Pago Pago Harbor on or about April 20, 2018, came from the *Capt. Vincent Gann*.

19.     During a follow-up inspection of the *Capt. Vincent Gann* on June 14, 2018, Coast Guard marine inspectors identified multiple operational defects and violations of pollution control regulations on the vessel, including: operating without a valid International Oil Pollution Prevention (IOPP) Certificate; unauthorized sludge transfers to tanks not identified on the vessel's IOPP Certificate; the inability of the chief engineer, Defendant DaCosta, to properly operate the oily water separator (OWS); a non-approved modification to the OWS piping that allows crewmembers to bypass the treatment equipment; an excessively leaking shaft rudder packing gland, which created a large amount of oily bilge waste; a lack of documented maintenance on the OWS, which was malfunctioning when it was tested during the inspection; omissions and errors in the Oil Record Book; omissions and errors in the Garbage Record Book; and a failure to post the required pollution-control placard in the languages understood by the crew.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Civil Penalties for Violation of CWA Section 311(b)(3)**
**33 U.S.C. § 1321(b)(3) – Oil Discharge**

20.     The preceding paragraphs are incorporated herein.

21.     Defendants discharged oil from the *Capt. Vincent Gann* into Pago Pago Harbor on or about April 20, 2018.

22.     Section 311(b)(3) of the CWA prohibits the discharge of oil or hazardous substances in "such quantities as may be harmful" into or upon, *inter alia*, the navigable waters of the United States or adjoining shorelines. 33 U.S.C. § 1321(b)(3).

23.     Pursuant to Section 311(b)(7)(A) of the CWA, "[a]ny person who is the owner, operator, or person in charge of any vessel . . . from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ." 33 U.S.C. § 1321(b)(7)(A).

24.     Civil penalties will be increased pursuant to Section 311(b)(7)(D) of the CWA if the violation results from "gross negligence or willful misconduct." 33 U.S.C. § 1321(b)(7)(D).

25.     Defendants are each a "person" within the meaning of Section 311(a)(7) of the CWA. 33 U.S.C. § 1321(a)(7).

26.     Defendants are the owner or operators and persons in charge of the vessel from which oil was discharged within the meaning of Section 311(a)(6) of the CWA. 33 U.S.C. § 1321(a)(6).

27.     The *Capt. Vincent Gann* is a "vessel" within the meaning of Section 311(a)(3) of the CWA. 33 U.S.C. § 1321(a)(3).

7

28.    The release of oil from the vessel in Pago Pago Harbor on or about April 20, 2018 constitutes a "discharge" of oil within the meaning of Section 311(a)(2) of the CWA. 33 U.S.C. § 1321(a)(2). For the purposes of Section 311(a)(2) of the CWA, "discharge" is defined to include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping . . . ," subject to certain specified exceptions not applicable here. 33 U.S.C. § 1321(a)(2).

29.    The discharge was of "oil" within the meaning of Section 311(a)(1) of the CWA. 33 U.S.C. § 1321(a)(1).

30.    The discharge of oil was into or upon the navigable waters of the United States within the meaning of Section 311(b)(3) of the CWA. Pago Pago Harbor is a navigable water. The "United States" is defined in Section 311 to include American Samoa. 33 U.S.C. § 1321(a)(5).

31.    The oil discharge caused a visible film or sheen on the surface of the water and was in a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3)-(4), and 40 C.F.R. § 110.3. Congress directed the President to determine by regulation "those quantities of oil and any hazardous substance the discharge of which may be harmful to public health or welfare or the environment of the United States." 33 U.S.C. § 1321(b)(4). The President delegated authority to the Administrator of the Environmental Protection Agency under CWA § 311(b)(3) and (b)(4) for determining quantities of

oil the discharge of which may be harmful. Exec. Order No. 12777, Section 8(a), 56 Fed. Reg. 54757, 54768 (1991). The EPA determined that discharges of oil that "violate applicable water quality standards, or cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines" are, for purposes of Section 311(b)(4) of the CWA, discharges of oil in such quantities that may be harmful to the public health or welfare or the environment of the United States. 40 C.F.R. § 110.3.

32.   Defendants discharged oil into Pago Pago Harbor in violation of Section 311(b)(3) of the CWA. 33 U.S.C. § 1321(b)(3).

33.   This oil discharge resulted from Defendants' willful misconduct or gross negligence.

34.   Defendants are each liable for civil penalties of up to $48,762 per day of violation or $1,951 per barrel discharged under CWA Section 311(b)(7)(A), or under Section 311(b)(7)(D) if it is proved that the violations are the result of gross negligence or willful misconduct, a minimum of $195,047 and up to $5,851 per barrel discharged. 33 U.S.C. § 1321(b)(7). *See also* 40 C.F.R. § 19.4 (listing the inflation-adjusted penalty rates for violations occurring after November 2, 2015).

## SECOND CAUSE OF ACTION

**Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C) 33 U.S.C. § 1321(b)(7)(C) – Failure to Properly Maintain Oil Record Book**

35.     The preceding paragraphs are incorporated herein.

36.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $48,762 per day for each violation pursuant to Section 311(b)(7)(C). 33 U.S.C. § 1321(b)(7)(C); *see also* 40 C.F.R. § 19.4.

37.     The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 151.25. Pursuant to 33 C.F.R. § 151.25, Defendants are required to properly maintain an Oil Record Book on the *Capt. Vincent Gann*. In the Oil Record Book Defendants are required to document, among other things, transfers of oil, the disposal of sludge and waste oil, overboard discharges of bilge water that has accumulated in machinery spaces, and any emergency, accidental, or other exceptional discharges of oil, including oily mixtures. Entries in the Oil Record Book must be fully recorded without delay and signed by the person in charge of the particular operation, and each page of the Oil Record Book must be signed by the master of the vessel. The Oil Record Book must be maintained on board the vessel for not less than three years and be readily available at all reasonable times. *See* 33 C.F.R. § 151.25(d), (g)-(k).

38.     Defendants failed to properly maintain the vessel's Oil Record Book on numerous occasions between July 2017 and June 2018 in violation of 33 C.F.R. § 151.25. Defendants' failure to properly maintain the Oil Record Book includes

omitting activities in some instances and incorrectly reporting activities in others. Each omission and incorrect or false entry is a separate violation.

39.    On multiple occasions between July 2017 and June 2018, Defendants transferred oily bilge water and oil sludge into and out of a tank on the vessel that was not approved for oily waste storage. None of those transfers was recorded in the Oil Record Book, in violation of 33 C.F.R. § 151.25. Defendants also failed to record the volume of oily waste being stored in this unauthorized tank.

40.    From September 2017 to June 2018, ten Oil Record Book entries on the amount of oily waste stored in the vessel's approved oily waste tank were made showing changes in waste volume without any record of transfer of waste in or out of the tank: September 20, 2017; September 24, 2017; September 25, 2017; October 15, 2017; February 22, 2018; February 23, 2018; March 1, 2018; March 4, 2018; March 19, 2018; and June 22, 2018. Thus, ten or more transfers of oily waste were omitted from the Oil Record Book, in violation of 33 C.F.R. § 151.25.

41.    In May and June 2018, Defendants operated the OWS for overboard discharges on three occasions without recording the operation in the Oil Record Book, in violation of 33 C.F.R. § 151.25: May 6, 2018; May 24, 2018; and June 8, 2018.

42.    From September 2017 to June 2018 Defendants operated the OWS for overboard discharges on five occasions without accurately recording the operation

11

in the Oil Record Book, in violation of 33 C.F.R. § 151.25: September 18, 2017; May 16, 2018; May 24, 2018; May 25, 2018; and June 1, 2018.

43.    From September 6, 2017 to at least June 2018, Defendants used a computer-generated Oil Record Book that did not provide for contemporaneous record-keeping or signatures, in violation of 33 C.F.R. § 151.25. Five pages of the computer-generated version of the Oil Record Book during this period are not signed by the master of the vessel covering the following entries: April 18, 2018 to May 4, 2018; May 4, 2018 to May 12, 2018; May 13, 2018 to May 18, 2018; May 20, 2018 to May 28, 2018; and May 28, 2018 to June 6, 2018.

44.    Defendants are each liable for civil penalties of up to $48,762 per day for each violation under Section 311(b)(7)(C) of the CWA.

### THIRD CAUSE OF ACTION

**Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C) 33 U.S.C. § 1321(b)(7)(C) – Failure to Properly Operate Oily Water Separator**

45.    The preceding paragraphs are incorporated herein.

46.    Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $48,762 per day for each violation pursuant to Section 311(b)(7)(C). 33 U.S.C. § 1321(b)(7)(C); *see also* 40 C.F.R. § 19.4.

47.    The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 155.380.

Pursuant to 33 C.F.R. § 155.380, Defendants are required to properly operate and maintain approved oily water separating equipment and a bilge alarm on the *Capt. Vincent Gann*. In particular, Defendants must maintain the manufacturer's calibration of the bilge alarm for accuracy, train the vessel's crew in the operation and maintenance of the equipment, and perform and record routine maintenance and repair of the equipment. 33 C.F.R. § 155.380(a), (d)-(f).

48.     Defendants operated the vessel for over one year without a valid manufacturer's calibration of the bilge alarm on the OWS, in violation of 33 C.F.R. § 155.380(a) and (d). During the June 2018 inspection of the vessel, Defendants produced to the Coast Guard marine inspectors a calibration certificate for the bilge alarm that did not match the serial number on the vessel's bilge alarm. Moreover, the calibration certificate that Defendants produced to the Coast Guard during the June 2018 inspection had expired on November 13, 2017.

49.     Defendants failed to properly train the vessel's crew on the operation and maintenance of the oily water separator system, in violation of 33 C.F.R. § 155.380(e). Specifically, Defendant DaCosta has served as the Chief Engineer for the vessel since about September 2017. During the June 2018 inspection of the vessel, Defendant DaCosta was incapable of operating the system for the Coast Guard marine inspectors and did not record any maintenance or repair of the OWS during his time as Chief Engineer.

50.     Defendants operated the vessel without performing and recording routine maintenance and repair of the oily water separator equipment, in violation of 33 C.F.R. § 155.380(f). Defendants' Oil Record Book does not list any maintenance or repair of the OWS equipment between July 2017 and the Coast Guard's June 2018 inspection, which was the first year of Defendants' ownership and operation of the vessel. The Coast Guard observed that the OWS was inoperable when it was tested during the June 2018 inspection.

51.     Defendants are each liable for civil penalties of up to $48,762 per day for each violation under Section 311(b)(7)(C) of the CWA.

## FOURTH CAUSE OF ACTION

### Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C) 33 U.S.C. § 1321(b)(7)(C) – Operating Without Valid IOPP Certificate

52.     The preceding paragraphs are incorporated herein.

53.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $48,762 per day for each violation pursuant to Section 311(b)(7)(C). 33 U.S.C. § 1321(b)(7)(C); *see also* 40 C.F.R. § 19.4.

54.     The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 151.19. Pursuant to 33 C.F.R. § 151.19, it is illegal for the vessel to operate without a valid IOPP Certificate.

55.     Defendants for an as-yet undetermined number of days operated in violation of 33 C.F.R. § 151.19 by operating the vessel with significant alterations in the oil piping and storage equipment as compared to the IOPP Certificate for the vessel. Alterations include use of a non-approved tank and associated piping for oily waste storage.

56.     Defendants are each liable for civil penalties of up to $48,762 per day for each violation under Section 311(b)(7)(C) of the CWA.

### FIFTH CAUSE OF ACTION

**Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C)
33 U.S.C. § 1321(b)(7)(C) – Illegal Discharge Connection**

57.     The preceding paragraphs are incorporated herein.

58.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $48,762 per day for each violation pursuant to Section 311(b)(7)(C). 33 U.S.C. § 1321(b)(7)(C); *see also* 40 C.F.R. § 19.4.

59.     The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 155.360. Pursuant to 33 C.F.R. § 155.360(b)(3)(ii), it is illegal for the vessel to have any "discharge connections to the bilge system . . . or oily water separator . . . ."

60.     Defendants for an as-yet undetermined number of days operated in violation of 33 C.F.R. § 155.360 by operating with an illegal discharge connection

to the OWS piping in a configuration that allowed for manual bypass of the oil filtration system and bilge alarm. During the June 2018 inspection of the vessel, Coast Guard marine inspectors discovered an unapproved piping connection on the downstream side of the OWS and bilge alarm. This piping configuration provided a way to circumvent the required treatment and monitoring system and allowed for direct discharge of oily waste into the ocean without detection or recording.

61.     Defendants are each liable for civil penalties of up to $48,762 per day for each violation under Section 311(b)(7)(C) of the CWA.

## SIXTH CAUSE OF ACTION

**Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C) – Failure to Properly Manage Garbage Disposal**

62.     The preceding paragraphs are incorporated herein.

63.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $48,762 per day for each violation pursuant to Section 311(b)(7)(C). 33 U.S.C. § 1321(b)(7)(C); *see also* 40 C.F.R. § 19.4.

64.     The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 151.55. Pursuant to 33 C.F.R. § 151.55, Defendants must maintain on the vessel a record of garbage discharge or disposal operations.

65.     Defendants for an as-yet undetermined number of days between July 2017 and June 2018 operated in violation of 33 C.F.R. § 151.55(b) by failing to record, or record accurately, in the Garbage Record Book the amount and category of garbage discharged.

66.     Defendants are each liable for civil penalties of up to $48,762 per day for each violation under Section 311(b)(7)(C) of the CWA.

## SEVENTH CAUSE OF ACTION

**Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C) – Failure to Display Proper Oil Discharge Placard**

67.     The preceding paragraphs are incorporated herein.

68.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $48,762 per day for each violation pursuant to Section 311(b)(7)(C). 33 U.S.C. § 1321(b)(7)(C); *see also* 40 C.F.R. § 19.4.

69.     The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 155.450. Pursuant to 33 C.F.R. § 155.450, a vessel 26 feet in length or greater must conspicuously display in each machinery space or at the bilge and ballast pump control station a "Discharge of Oil Prohibited" placard printed in the language or languages understood by the crew.

70.     On June 14, 2018, Coast Guard marine inspectors found on the vessel a "Discharge of Oil Prohibited" placard printed in English and no other language.

71.     The *Capt. Vincent Gann* did not display a "Discharge of Oil Prohibited" placard written in a language other than English between at least July 2017 and June 2018.

72.     One or more foreign crewmembers working aboard the *Capt. Vincent Gann* between July 2017 and June 2018 were unable to read English.

73.     Defendants are each liable for civil penalties of up to $48,762 per day for each violation under Section 311(b)(7)(C) of the CWA.

## EIGHTH CAUSE OF ACTION

## Injunctive Relief under CWA Section 311(e), 33 U.S.C.  § 1321(e)

74.     The preceding paragraphs are incorporated herein.

75.     In addition to civil penalties for the violations identified above, the United States seeks injunctive relief from JM Fisheries LLC, G.S. Fisheries Inc., and James Sousa to prevent future discharges of oil and other violations. Section 311(e) of the CWA authorizes the Coast Guard to act when it determines there "may be an imminent and substantial threat[s] to the public health or welfare of the United States . . . because of an actual or threatened discharge of oil or a hazardous substance from a vessel or facility in violation of subsection (b)." 33 U.S.C. § 1321(e).

76.     Section 311(e)(1)(A) of the CWA authorizes the Attorney General to secure "any relief from any person . . . as may be necessary to abate such endangerment." 33 U.S.C. § 1321(e)(1)(A). District courts have "jurisdiction to grant any relief under this subsection that the public interest and the equities of the case may require." 33 U.S.C. § 1321(e)(2).

77.     Defendants are each a "person" within the meaning of Section 311(e) of the CWA.

78.     Discharges of oil into the ocean by Defendants and from the *Capt. Vincent Gann's* engine room pose imminent and substantial threats to natural resources and to the public health or welfare. Such threats are likely to continue unless corrective measures are imposed by the Court.

## REQUEST FOR RELIEF

WHEREFORE, The United States respectfully requests that this Court:

A.     Find Defendants liable and assess civil penalties against each Defendant, separately and individually, for the oil discharge violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), in the amount of up to $48,762 per day of violation under CWA Section 311(b)(7)(A) or, if it is proved that the violation is the result of gross negligence or willful misconduct, in the amount of at least $195,047 per discharge and up to $5,851 per barrel discharged under Section 311(b)(7)(D);

B.     Find Defendants liable and assess civil penalties against each

Defendant, separately and individually, of up to $48,762 per day for each violation

of the Coast Guard's pollution control regulations, as authorized under Section

311(b)(7)(C), 33 U.S.C. § 1321(b)(3);

C.     Enjoin Defendants JM Fisheries LLC, G.S. Fisheries Inc., and James

Sousa from continuing their illegal practices and order them to perform other

appropriate injunctive relief to prevent future oil discharges or related violations;

and

D.     Award such other and further relief as the Court may deem just and

proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


_____*s/ Jason T. Barbeau*_____
JASON T. BARBEAU
Senior Trial Attorney (D.C. Bar No. 468200)
STEFAN J. BACHMAN
Trial Attorney (S.C. Bar No. 102182)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044

(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov
stefan.bachman@usdoj.gov

JUDITH A. PHILLIPS
Acting United States Attorney
District of Hawaii

RACHEL S. MORIYAMA #3802
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: Rachel.Moriyama@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Of Counsel:

LCDR Amanda Gavelek
Fourteenth Coast Guard District Legal
300 Ala Moana Blvd, Rm 9-130
Honolulu, Hawaii 96850

LCDR Justin Jolley
Office of Claims and Litigation
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC 20593-7213